An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-658

Filed 4 March 2026

Office of Administrative Hearings, No. 22DHR02385

FLETCHER HOSPITAL INC. d/b/a ADVENTHEALTH HENDERSONVILLE, Petitioner,

v.

NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF HEALTH SERVICE REGULATION, HEALTH CARE PLANNING AND CERTIFICATE OF NEED SECTION, Respondent,

And

MH MISSION HOSPITAL, LLLP, Respondent-Intervenor.

Appeal by petitioner from final decision on remand entered 7 March 2025 by Administrative Law Judge David F. Sutton in the Office of Administrative Hearings. Heard in the Court of Appeals 10 February 2026.

> *Wyrick Robbins Yates & Ponton LLP, by Charles George, Frank S. Kirschbaum, and Trevor Presler, for Petitioner-appellant.*
>
> *Attorney General Jeff Jackson, by Special Deputy Attorney General Derek L. Hunter, for Respondent-appellee.*
>
> *Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., by Iain M. Stauffer and William F. Maddrey, for Respondent-intervenor-appellee.*

ARROWOOD, Judge.

Fletcher Hospital, Inc. d/b/a AdventHealth Hendersonville ("AdventHealth") appeals from a final decision on remand from this Court granting summary judgment to North Carolina Department of Health and Human Services, Division of Health Service Regulation, Healthcare Planning and Certificate of Need Section ("DHHS") and MH Mission Hospital, LLLP ("Mission"). For the following reasons, we affirm the final decision.

## I. Background

In February 2022, Mission filed a non-competitive application for a Certificate of Need ("CON") to build a freestanding emergency department ("FSED") in Candler, North Carolina. Due to public health concerns related to the COVID-19 pandemic, DHHS did not hold an in-person public hearing on Mission's CON application. Instead, DHHS accepted written comments regarding the applications. AdventHealth filed written comments in opposition to Mission's application. Members of the public also filed comments both in support of and in opposition to Mission's application. Following its review of the application and written comments, DHHS conditionally approved Mission's CON application on 24 May 2022.

AdventHealth filed a Petition for Contested Case Hearing on 23 June 2022 contesting DHHS's conditional approval of Mission's CON application. On 17 March 2023, the Administrative Law Judge ("ALJ") granted summary judgment

in favor of AdventHealth. The ALJ concluded that DHHS erred by failing to hold in-person hearings and that AdventHealth's rights were substantially prejudiced by that error as a matter of law. Mission and DHHS appealed the ALJ's decision to this Court on 14 April 2023.

This Court considered Mission and DHHS's appeal of the 17 March 2023 decision in *Fletcher Hosp. Inc. v. N.C. Dep't of Health & Hum. Servs.*, 293 N.C. App. 41 (2024) [hereinafter *Fletcher I*]. There, we explained that as the petitioner in a contested case hearing, AdventHealth had the burden of separately establishing that DHHS erred and that DHHS substantially prejudiced AdventHealth's rights. *Id.* at 49–50. We held that AdventHealth successfully showed that DHHS erred by failing to hold a public hearing on Mission's CON application under N.C.G.S. § 131E-185(a1)(2). *Id.* at 46–47. However, we also held that "substantial prejudice cannot be presumed *per se*" and so AdventHealth had not yet met its burden to show substantial prejudice. *Id.* at 50–51. We vacated the ALJ's Order and remanded the case for further proceedings. *Id.* at 51.

On remand, the ALJ reconsidered the parties' motions for summary judgment. AdventHealth offered additional evidence to show substantial prejudice including findings in related disputes between the parties and testimony about the effect of public hearings and the approval of Mission's CON application. For example, AdventHealth presented findings by ALJ Sutton in a separate proceeding which stated that public hearings provide the opportunity "to speak directly to the analyst,

express opinions that they may not be able to put as easily in writing, for DHHS to ask questions and the public to demonstrate support or opposition to a project." AdventHealth also pointed to past decisions in which DHHS relied on public hearing comments to determine conformity with CON requirements.

In a deposition, Graham Fields, the Assistant to the President of AdventHealth, testified that had there been a public hearing he would have been garnering support for the opposition and "making sure the community had ample opportunity to share its thoughts." He also testified that based on public participation in past hearings for other medical centers, he expected that a public hearing on Mission's CON application would have brought in "a great number of people" and raised "very serious concerns" for the project.

As to prejudice resulting from the approval of Mission's CON Application, AdventHealth presented evidence of how Mission's FSED would interfere with AdventHealth's business and operations. AdventHealth projected that Mission's FSED in Candler would result in over $4 million in contribution margin losses from lost patient admissions. Additionally, AdventHealth's employees and expert witnesses reported that the loss of revenue would force AdventHealth to discontinue some of its unprofitable community benefit services including maternity and mental health.

AdventHealth also offered evidence about the effects of Mission's specific practices and power. Evidence demonstrated that Mission has little competition for

acute care services in Buncombe County, in part because it received a Certificate of Public Advantage that exempted Mission from antitrust laws and allowed it to merge with St. Joseph's Hospital. In a letter opposing one of Mission's other CON applications, the Attorney General explained that Mission's "lack of competition harms residents of western North Carolina by increasing the cost, and reducing the quality, of health care services in the region." In a separate letter, the Attorney General stated that they had received complaints that Mission charges high prices and prohibits insurers from encouraging patients to receive care from less expensive providers. As to how that affects AdventHealth, AdventHealth's CEO stated that Mission's monopoly-like status gives them "levers that other entities do not have" such as the ability to control the market on pay.

On 7 March 2025, ALJ Sutton entered a final decision granting summary judgment in favor of DHHS and Mission. AdventHealth filed notice of appeal to this Court on 7 April 2025.

## II.  Discussion

AdventHealth raises three issues on appeal: 1) whether the ALJ erred by not considering if Mission's and DHHS's rights were substantially prejudiced by the initial Final Decision Granting Summary Judgment for Petitioner; 2) whether the ALJ erred by denying AdventHealth's motion for summary judgment; and 3) whether the ALJ erred by failing to conclude that Mission's misrepresentation about the commitment of funds for its proposed project warranted reversal of DHHS's decision.

We address each issue in turn.

A.    Standard of Review

Judicial review of an ALJ's final decision allowing summary judgment is governed by the North Carolina Administrative Procedure Act ("APA") which states in relevant part:

> In reviewing a final decision allowing judgment on the pleadings or summary judgment, the court may enter any order allowed by G.S. 1A-1, Rule 12(c) or Rule 56. If the order of the court does not fully adjudicate the case, the court shall remand the case to the administrative law judge for such further proceedings as are just.

N.C.G.S. § 150B-51(d).

Pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, "[s]ummary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'any party is entitled to a judgment as a matter of law.' " *Cottle v. Mankin*, 923 S.E.2d 502, 506 (2025) (quoting *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88 (2006)). "When considering a summary judgment motion, all inferences of fact must be drawn against the movant in favor of the party opposing the motion." *Id.* (cleaned up). Lastly, "[a]s summary judgment is a matter of law, review by this Court in this matter is *de novo*." *Bio-Medical Applications of N.C. Inc. v. N.C. Dep't of Health & Hum. Servs.*, 282 N.C. App. 413, 415 (2022) (quoting *Presbyterian Hosp. v. N.C. Dep't of Health & Hum. Servs.*, 177 N.C. App. 780, 782 (2006)).

B. <u>Burden on Remand</u>

AdventHealth contends that the ALJ wrongfully imposed the burden of showing substantial prejudice on AdventHealth, when the burden should have been imposed on Mission and DHHS. AdventHealth argues that in *Fletcher I*, this Court should have applied the standard of review outlined in N.C.G.S § 150B-51(b) and that § 150B-51(b) requires the party challenging the ALJ's final decision to show that the final decision prejudiced their substantial rights. We do not agree that Mission and DHHS needed to demonstrate substantial prejudice.

We begin with a discussion of a petitioner's burden in a contested case hearing and the standard of review on appeal. After DHHS issues a CON, any affected person may initiate a contested case hearing by filing a petition. N.C.G.S. § 131E-188(a) (2025). The petitioner's burden in a contested case is provided in N.C.G.S. § 150B-23(a):

> A petition shall . . . state facts tending to establish that the agency named as the respondent has deprived the petitioner of property, has ordered the petitioner to pay a fine or civil penalty, or has otherwise substantially prejudiced the petitioner's rights and that the agency did any of the following:
>
> (1) Exceeded its authority or jurisdiction.
>
> (2) Acted erroneously.
>
> (3) Failed to use proper procedure.
>
> (4) Acted arbitrarily or capriciously.

(5) Failed to act as required by law or rule.

N.C.G.S. § 150B-23(a) (2025).

"This Court has interpreted subsection (a) to mean that the ALJ in a contested case hearing must determine whether the petitioner has met its burden in showing that the agency substantially prejudiced the petitioner's rights." *Bio-Medical Applications of N.C. Inc.*, 282 N.C. App. at 416–17 (quoting *Surgical Care Affiliates, LLC v. N.C. Dep't of Health & Hum. Servs.*, 235 N.C. App. 620, 624 (2014)). Therefore, a petitioner in a CON case must show that the agency 1) substantially prejudiced the petitioner's rights *and* 2) that the agency erred in one of the ways outlined in N.C.G.S. § 150B-23(a). *Surgical Care Affiliates LLC*. 235 N.C. App. at 624. "These are discrete requirements and proof of one does not automatically establish the other." *Id.* at 629. It is under N.C.G.S. § 150B-23(a) that AdventHealth bears the burden of showing substantial prejudice.

Meanwhile, the standard of review for final decisions under the APA is governed by § 150B-51 which provides:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

(c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

(d) In reviewing a final decision allowing judgment on the pleadings or summary judgment, the court may enter any order allowed by G.S. 1A-1, Rule 12(c) or Rule 56. If the order of the court does not fully adjudicate the case, the court shall remand the case to the administrative law judge for such further proceedings as are just.

N.C.G.S. § 150B-51.

AdventHealth argues that § 150B-51(b) applied in *Fletcher I* and only allows the court to "reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced[.]" AdventHealth further contends that the term "petitioner" in § 150B-51(b) refers to the party appealing the final decision and thus on remand the ALJ should have determined whether Mission and DHHS were

substantially prejudiced by the ALJ's original final decision granting summary judgment.

To support its argument, AdventHealth cites *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 652 (2004), because there the respondent, Carroll, filed the original petition for a contested case hearing but the N.C. Department of Environment and Natural Resources was listed as the "petitioner" because it filed the action challenging the administrative agency's final decision. However, in *Carroll*, the final decision was not on the pleadings or summary judgment. *Id.* Additionally, the Supreme Court of North Carolina affirmed the final agency decision and did not engage in a substantial prejudice analysis. *Id.* at 676. Thus, it does not provide support for AdventHealth's argument that § 150B-51(b) governs here or that AdventHealth's original burden of proof disappears on remand and is replaced by a burden on the appellants to show substantial prejudice.

AdventHealth ignores § 150B-51(d) which specifically applies to review of final decisions granting summary judgment. *See Krueger v. N.C. Crim. Just. Educ. & Training Standards Comm'n*, 198 N.C. App. 569, 576–77 (2009) (holding that the trial court erred by applying § 150B-51(b) instead of following § 150B-51(d) and Rule 56). § 150B-51(d) allows a reviewing court to "enter any order allowed by G.S. 1A-1, Rule 12(c) or Rule 56" and requires the reviewing court to remand the case to the ALJ if the order "does not fully adjudicate the case." In *Fletcher I*, this Court reviewed the ALJ's decision granting summary judgment but did not fully adjudicate the case

because we did not rule on whether AdventHealth could ultimately demonstrate substantial prejudice. *Fletcher I*, 293 N.C. App. at 50. Thus, § 150B-51(d) allowed this Court to remand for further proceedings and did not create a new burden for Mission and DHHS to demonstrate substantial prejudice.

Instead, AdventHealth retained its original burden under § 150B-23(a) as outlined by this Court in *Fletcher I*:

> As the petitioner, AdventHealth has the burden of proof in this matter . . . . AdventHealth satisfied its burden of proof by showing Agency error. However, it must also separately establish that it was substantially prejudiced by the Agency's error; it may not rest its case upon a bare allegation that it was prejudiced by Agency error alone.

*Id.* This Court also emphasized that though AdventHealth had not demonstrated substantial prejudice in *Fletcher I*, "AdventHealth may ultimately satisfy its burden; it may not." *Id.* Accordingly, when this Court vacated and remanded the ALJ's first final order, it was clear that the issue on remand was whether DHHS had substantially prejudiced AdventHealth's rights. The ALJ followed this Court's directive and considered the proper issue on remand.

### C. Substantial Prejudice

AdventHealth alternatively argues that it met its burden of showing substantial prejudice under N.C.G.S. § 150B-23(a) and therefore the ALJ erred by denying AdventHealth's motion for summary judgment and instead granting summary judgment in favor of Mission and DHHS. AdventHealth points to the

evidence it presented about the harms resulting from not having an in-person hearing, the economic and program losses AdventHealth may suffer as a result of Mission's proposed FSED, and the harms that arise from Mission's monopoly.

As discussed above, substantial prejudice must be shown separate from agency error. *See Surgical Care Affiliates LLC*. 235 N.C. App. at 629. "The harm required to establish substantial prejudice cannot be conjectural or hypothetical. It must be concrete, particularized, and 'actual' or imminent." *Id.* at 631. Additionally, increased competition alone is not a sufficient basis for substantial prejudice because if it was, that "would eviscerate the substantial prejudice requirement[.]" *Parkway Urology, P.A. v. N.C. Dep't of Health & Hum. Servs.,* 205 N.C. App. 529, 539 (2010); *see also Chesapeake Diagnostic Imaging Ctrs., LLC v. N.C. Dep't of Health & Hum. Servs.*, 919 S.E.2d 301, 305 (2025). Instead, the petitioner is required "to provide specific evidence of harm resulting from the award of the CON . . . that went above and beyond any harm that necessarily resulted from additional . . . competition[.]" *Parkway Urology, P.A.*, 205 N.C. App. at 539.

"Simply quantifying the harm likely to arise out of additional competition" is not sufficient to show substantial prejudice. *CaroMont Health, Inc. v. N.C. Dep't of Health & Hum. Servs.*, 231 N.C. App. 1, 10 (2013). In *CaroMont Health, Inc.*, CaroMont argued it was substantially prejudiced by DHHS's approval of intervenor Greater Gaston Center LLC's ("GGC") CON to relocate its endoscopy rooms because CaroMont would suffer financially from the CON approval. *Id.* at 3, 6. CaroMont

identified specific professionals who would shift cases to GGC, and thus away from CaroMont, either by referring their patients to GGC or performing procedures there. *Id.* at 5–6. Additionally, CaroMont presented testimony that it would lose between $463,000.00 and $925,000.00 of net income per year. *Id.* at 11. This Court held that although it was specific, CaroMont's evidence was insufficient to show substantial prejudice because, "the harm resulted solely from the CON's introduction of additional competition." *Id.* at 10.

That said, as this Court noted in a previous case between these parties concerning a separate CON, "our caselaw does not categorically preclude increased competition from constituting substantial prejudice[.]" *Fletcher Hosp. Inc. v. N.C. Dep't of Health & Hum. Servs.*, 295 N.C. App. 82, 90 (2024) [hereinafter *Fletcher II*]. There, we held that a market competitor challenging a CON could show substantial prejudice by "mak[ing] a *specific* argument as to how that increased competition affects their provision of services." *Id.* (emphasis in original). However, for similar reasons as in *Fletcher I*, we did not consider whether substantial prejudice actually existed in that case and consequentially did not provide further guidance as to what constitutes a specific argument or what types of interference with provisions of services amount to substantial prejudice. *See id.*

Our prior case law suggests that allegations that lost revenue will compromise the petitioner's services is insufficient to support a finding of substantial prejudice. *Blue Ridge Healthcare Hosps. Inc. v, N.C. Dep't of Health & Hum. Servs.*, 255 N.C.

App. 451, 464 (2017). In *Blue Ridge Healthcare Hospitals Inc.*, Blue Ridge argued that it was substantially prejudiced by the approval of a CON because it would lose patients and profits which in turn would compromise its neonatal and emergency services. *Id.* This Court held that those harms were the result of normal competition and thus could not constitute a showing of substantial prejudice. *Id.* at 464–65.

Here, the ALJ's award of summary judgment to Mission and DHHS was proper because AdventHealth failed to meet its burden of showing substantial prejudice. The evidence that AdventHealth presented about the harm arising from not holding an in-person hearing is hypothetical and fails to demonstrate specific, actual harm. AdventHealth's prediction that there would have been significant community participation at an in-person hearing, and that the public would have raised serious concerns, is purely speculative. Moreover, AdventHealth did not demonstrate that such an in-person crowd would have had a different effect on the CON determination than the written comments that were actually submitted from the public.

Additionally, while AdventHealth pointed to unique features of in-person hearings, such as the ability to speak directly to an analyst, it did not identify any specific or actual harm that resulted from being limited to written comments and replies. Similarly, AdventHealth provided examples of past DHHS determinations that relied on information from the public hearing but did not demonstrate that the expanded written comments system devised by DHHS in this matter could not provide that same information. Indeed, AdventHealth does not allege that any

specific information was not considered as a result of DHHS's decision to not have an in-person hearing. Instead, AdventHealth generally argues that "context was missed" which is not specific enough to support a claim of substantial prejudice.

AdventHealth's evidence about how Mission's FSED would harm AdventHealth's business and operations also fails to show substantial prejudice. AdventHealth argues that its projections of lost revenue due to the approval of the CON and how that lost revenue would cause AdventHealth to discontinue certain programs satisfies *Fletcher II*'s requirement that it "make a *specific* argument as to how that increased competition concretely affects their provision of services." However, this Court has already held that quantifications of lost revenue and the resulting compromise of certain services are not sufficient to show substantial prejudice in *CaroMont Health Inc.* and *Blue Ridge Healthcare Hosps. Inc.* AdventHealth has not demonstrated that its evidence of harm is significantly dissimilar to those cases. Accordingly, we hold that *CaroMont Health Inc.* and *Blue Ridge Healthcare Hosps. Inc.* control here and conclude that AdventHealth has not demonstrated harm that goes above and beyond that which naturally results from additional competition.

AdventHealth also contends that the competition it faces is not "normal" because Mission benefits from a "state-sanctioned monopoly" so it can put significant pressure on AdventHealth. However, "monopoly is not a 'magic word'" showing substantial prejudice. *See Chesapeake Diagnostic Imaging Ctrs., LLC*, 919 S.E.2d at

305. AdventHealth must still present specific evidence of how that monopoly creates harm that would not otherwise result from normal competition and AdventHealth failed to do so.

AdventHealth presented several pieces of evidence, including the letters from the Attorney General, to support its allegation that Mission has a monopoly, but did not present specific evidence of how Mission's large market share would substantially prejudice AdventHealth. The CEO of AdventHealth's statement that Mission had more "levers" due to its monopoly-like status is general and fails to demonstrate particularized harm. The only specific and actual harms that AdventHealth alleges are financial harms resulting from market loss and the discontinuation of unprofitable services, which are the same types of harm that this Court has held are insufficient to show substantial prejudice. Without an additional demonstration that those harms rise above and beyond that which is the natural result of increased competition, AdventHealth cannot meet its burden of showing substantial prejudice.

Notably, our decision that AdventHealth has failed to show substantial prejudice is consistent with this Courts recent decision in *Fletcher Hosp. v. N.C. Dep't of Health & Hum. Servs.*, No. COA24-994, 2025 WL 3088028 (N.C. Ct. App. Nov. 5, 2025) [hereinafter *Fletcher III*], where we considered a similar issue between the same parties in this matter. There, this Court conducted a *de novo* review of whether AdventHealth had met its burden of showing substantial prejudice. *Id.* at *6. AdventHealth advanced similar arguments that its projections of lost revenue and

the resulting impact on its community services demonstrated specific evidence of harm and that the harm did not arise from "normal" competition because of Mission's monopoly-like status. *Id.* at *4–6. We rejected both arguments.

As to the AdventHealth's evidence about discontinuing services, we held that under *Blue Ridge Healthcare Hospitals Inc.*, "a petitioner's hindered ability to provide 'other services[,]' due to reduced profits resulting from normal competition, does not suffice to demonstrate substantial prejudice." *Id.* at *5 (citing *Blue Ridge Healthcare Hospitals Inc.*, 255 N.C. App. at 464). As to AdventHealth's monopoly argument, we held "we will not treat this allegation [of monopoly status], without more, as appropriate grounds for reversal[.]" *Id.* at *6. Ultimately, we affirmed the ALJ's grant of summary judgment to Mission and DHHS because AdventHealth "failed to present specific evidence in support of a claim of substantial prejudice, which is necessary for proper reversal of DHHS's decision to award a CON." *Id.*

### D.   Criterion 5

Lastly, AdventHealth argues that the ALJ erred by "fail[ing] to conclude that Mission's misrepresentation about the availability and commitment of funds for its proposed project and failure to conform with Criterion 5 warranted reversal of [DHHS's] Decision due to the substantial prejudice to AdventHealth." However, AdventHealth does not present any additional evidence of substantial prejudice.

As discussed above, AdventHealth failed to meet its burden of demonstrating that DHHS substantially prejudiced its rights. As substantial prejudice is an

essential element for reversing DHHS's decision to award a CON, we need not address AdventHealth's remaining argument that DHHS erred in approving Mission's CON application. *See id.*; *Surgical Care Affiliates, LLC*, 235 N.C. App. at 621. Additionally, because AdventHealth did not provide sufficient evidence to show substantial prejudice, there is no genuine issue of material fact and Mission and DHHS are entitled to judgment as a matter of law. Accordingly, we affirm the ALJ's final decision awarding summary judgment in favor of Mission and DHHS.

## III.    Conclusion

For the foregoing reasons, we affirm ALJ Sutton's final decision on remand granting summary judgment in favor of Mission and DHHS.

AFFIRMED.

Judges CARPENTER and GORE concur.

Report per Rule 30(e).